FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2012 APR 25 AM 11:42
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| ANDREW WHITE PAYNE, JR., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CV 111-005 |
| | ) |
| JEFF CHANDLER, Warden,[1] | ) |
| | ) |
| Respondent. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate incarcerated at Floyd County Prison, in Rome, Georgia, brought the above-captioned petition pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

### I.   BACKGROUND

In August of 2004, Petitioner pleaded guilty to three counts of first degree forgery and one count of second degree forgery in the Superior Court of Wilkes County. (Doc. no. 10, Ex. 3, p. 1.) Petitioner was sentenced as a recidivist to ten years of imprisonment on one

---

[1] Warden Glen Johnson was previously named as the Respondent in this action. However, Rule 2(a) of the Rules Governing § 2254 Cases in the United States District Courts requires that the state officer who has custody of the petitioner should be named as the respondent when the petitioner is in custody under a state-court judgment at the time of filing the petition. Therefore, Jeff Chandler, the Warden at Floyd County Prison, the facility where Petitioner is now incarcerated, is hereby substituted as the Respondent in this case. The **CLERK** is **DIRECTED** to modify the docket accordingly.

count of first degree forgery; two consecutive years of imprisonment on another count of first degree forgery; five years of imprisonment concurrent with the ten-year term for a third count of first degree forgery; and five years of imprisonment concurrent with the ten-year term for the count of second degree forgery.[2] Payne v. State, 623 S.E.2d 668, 669 (Ga. Ct. App. 2005). Following Petitioner's convictions, he filed several *pro se* motions to modify or vacate his sentence; when the trial court denied these various motions, Petitioner appealed to the Court of Appeals of Georgia, which affirmed the trial court.[3] See id. at 670, *cert. denied*, No. S06C0804, 2006 Ga. LEXIS 326, at *1 (Ga. Apr. 25, 2006).

In December of 2006, Petitioner filed a state habeas corpus petition in the Superior Court of Baldwin County. (Doc. no. 10, Ex. 1.) Through appointed counsel,[4] Petitioner was permitted to amend his petition, and he raised the following grounds for relief in the amended petition:

(1) Petitioner's trial counsel rendered ineffective assistance by:

    (a) failing to ensure that the State tendered certified copies of his prior felony convictions, which were used to support recidivist punishment

---

[2] According to the Court of Appeals, Petitioner was initially charged with four counts of first degree forgery, five counts of second degree forgery, one count of operating a motor vehicle with a suspended license, and one count of possessing false identification; one count of first degree forgery, four counts of second degree forgery, the count of operating a motor vehicle with a suspended license, and the count of possessing false identification were dropped when Petitioner entered into the guilty plea. Payne, 623 S.E.2d at 669.

[3] Of relevance to the instant case, one of Petitioner's motions considered by the Court of Appeals of Georgia asserted that the State had violated his due process rights when it filed an amended accusation raising an entirely new charge against him. Id.

[4] Petitioner was represented by different counsel during his collateral attack than at trial. (See doc. no. 1, p. 12.)

2

     pursuant to O.C.G.A. § 17-10-7(c);[5]

  (b) erroneously advising Petitioner that he would not be punished as a recidivist;

  (c) failing to object when the prosecutor informed the trial court that Petitioner had previously been incarcerated nine times; and

  (d) failing to properly prepare and conduct research for the case;

(2) his guilty plea was not knowing and voluntary because his trial counsel informed him he would not be punished as a recidivist, and thus he did not understand the consequences of his guilty plea;

(3) his punishment as a recidivist was invalid because:

  (a) the State's notice of intent to seek recidivist punishment contained false and inaccurate information;

  (b) certified copies of his prior convictions were not entered into the trial record;

  (c) the trial court failed to establish that the State had met its burden to show that Petitioner qualified as a recidivist; and

  (d) the trial record failed to indicate a "pronouncement" of recidivist punishment;

(4) the prosecutor made false statements to the trial court by stating that notice of intent to seek recidivist punishment had previously been filed; and

(5) Petitioner was deprived of his right to counsel at arraignment.

(Id., Ex. 3, pp. 2-3, 8-9; doc. no. 15, Ex. 5.) After an August 27, 2008 evidentiary hearing, Petitioner's state habeas corpus petition was denied in its entirety on May 26, 2010. (Doc. no. 10, Exs. 2-3.) The Georgia Supreme Court denied Petitioner's application for a certificate of probable cause to appeal on October 4, 2010. (Id., Ex. 4.)

---

[5]O.C.G.A. § 17-10-7(c) provides, in relevant part:

any person who, after having been convicted under the laws of [Georgia] for three felonies or having been convicted under the laws of any other state or of the United States of three crimes which if committed within [Georgia] would be felonies, commits a felony within [Georgia] shall, upon conviction for such fourth offense or for subsequent offenses, serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served.

Petitioner then timely filed the above-captioned petition, in which he raises the following grounds for relief:

(1) his trial counsel rendered ineffective assistance by:
    (a) failing to do any research for his case;
    (b) failing to appear at arraignment;
    (c) failing to inform Petitioner that the State had filed a notice to seek recidivist punishment; and
    (d) failing to object to the State's introduction of Petitioner's prior convictions, which Petitioner asserts were uncertified, purportedly rendering invalid his sentencing as a recidivist;

(2) his guilty plea was not knowing and voluntary because his trial counsel failed to properly notify him that he could be punished as a recidivist under O.C.G.A. § 17-10-7(c); and

(3) his due process rights were violated because the State filed an amended accusation three days before his sentencing, and Count 2 of the amended accusation included an entirely new charge against him.[6]

(Doc. no. 1, pp. 5-6, 8; see also doc. no. 9.) In his answer, Respondent submits that Petitioner is not entitled to relief because each claim either lacks merit or is procedurally defaulted. (Doc. no. 10.) Petitioner filed a reply to the answer disputing Respondent's contentions. (Doc. no. 12.) The Court resolves the matter as follows.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), signed into law on April 24, 1996, amended § 2254(d) to provide:

---

[6]In Ground Three of the instant petition, Petitioner indicates that the State failed to disclose evidence favorable to the defense, thereby committing a violation under Brady v. Maryland, 373 U.S. 83, 87 (1963). (Doc. no. 1, p. 8.) However, an inspection of Petitioner's assertion with regard to this Ground reveals that he is essentially arguing that the State violated his right to due process when it filed an amended accusation against him three days before his guilty plea hearing, and the amended accusation included a brand new charge against Petitioner. (Id.; doc. no. 9, p. 25.)

4

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 562 U.S. ___, 131 S. Ct. 770, 787 (2011). Accordingly, § 2254(d) creates a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. ___, 131 S. Ct. 1388, 1398 (2011) (quoting Harrington, 131 S. Ct. at 786; Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (*per curiam*)) (internal citation omitted).

In Brown v. Payton, 544 U.S. 133, 141 (2005), the Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> [The] AEDPA provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially

5

> indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

Id. (internal citations omitted). Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is "incorrect or erroneous;" only a showing that the decision was "objectively unreasonable" will entitle a petitioner to relief. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003). In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S. Ct. at 1398. In sum, a habeas petition may be granted if "the state court's decision was contrary to, or involved an objectively unreasonable application of, the governing Federal law set forth by Supreme Court cases." McIntyre v. Williams, 216 F.3d 1254, 1257 (11th Cir. 2000).

Moreover, the AEDPA mandates a highly deferential standard of review for state court factual determinations. With regard to factual determinations, a federal habeas court may only grant relief if a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Wood v. Allen, 558 U.S. ___, 130 S. Ct. 841, 848-49 (2010) ("The term 'unreasonable' is no doubt difficult to define. It suffices to say, however, that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." (internal citation and punctuation omitted)). Additionally, § 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct" and that the habeas petitioner has the burden of rebutting that presumption "by clear

and convincing evidence." See also Reese v. Sec'y, Fla. Dep't of Corr., ___ F.3d ___, No. 11-12178, 2012 WL 1059452, at *7 (11th Cir. Mar. 30, 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review." (citing Stephens v. Hall, 407 F.3d 1195, 1202 (11th Cir. 2005) (internal punctuation omitted)).

### III. DISCUSSION

#### A. Ineffective Assistance of Trial Counsel Claims Rejected by the State Habeas Court

As noted above, in Ground One of his petition, Petitioner raises various claims that his trial counsel provided ineffective assistance. In subsection (a) of Ground One, Petitioner claims that his trial counsel was ineffective because she failed to do any research for his case; in subsection (c), Petitioner claims that she failed to inform him that the State had filed a notice of its intent to punish him as a recidivist; and in subsection (d), Petitioner asserts that his trial counsel failed to object to the State's introduction of allegedly uncertified prior convictions that were used to support his punishment as a recidivist.[7] (Doc. no. 1, p. 5.) Petitioner asserted each of these claims in his amended state habeas petition, and the state habeas court rejected the claims on the merits. (Doc. no. 10, Ex. 3, pp. 2-6.) Specifically applying the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984), that court determined that Petitioner's trial counsel acted within the constitutional parameters of

---

[7]In subsection (b) of Ground One, Petitioner further asserts that his trial counsel was ineffective for failing to appear at his arraignment. The state habeas court analyzed this claim separately from Petitioner's remaining claims of ineffective assistance as ground 5 of Petitioner's state habeas petition. (See doc. no. 10, Ex. 3, p. 9.) The Court will likewise discuss this claim separately below.

reasonableness in her representation of Petitioner. (See id. at 5-6.)

As correctly noted by the state habeas court, ineffective assistance of counsel claims are analyzed under the two-prong test set forth by the Supreme Court in Strickland v. Washington. The facts of Strickland, however, are dissimilar from those presented here. Moreover, it cannot be said that the result reached by the state habeas court was contrary to clearly established federal law. Thus, the Court will focus its attention on whether the state habeas court unreasonably applied Strickland to the facts of this case. Bell v. Cone, 535 U.S. 685, 699 (2002) ("[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather, [the petitioner] must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner." Id. (internal citations omitted)); see also Cave v. Sec'y for the Dep't of Corr., 638 F.3d 739, 748 (11th Cir. 2011) (noting that, where the state court has previously adjudicated a claim on the merits, the petitioner "has the additional burden of demonstrating that the state court's application of this demanding standard was not merely wrong, but objectively unreasonable"). Moreover, because "[t]he standards created by Strickland and § 2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so." Richter, 131 S. Ct. at 788 (quotation marks and citations omitted); Premo v. Moore, 562 U.S. ___, 131 S. Ct. 733, 740 (2011) (same).

Under the first prong of the Strickland standard, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United

States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as [trial] counsel acted . . . ." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice prong of Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). As the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations omitted).

9

In the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1987). In assessing whether a habeas petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Id. at 58. Therefore, to succeed in his federal habeas corpus challenge to his state court conviction via a guilty plea entered on the advice of counsel, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, *and* that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. Id. at 56-59.

In order to assess Petitioner's claim that his trial counsel had been ineffective, the state habeas court heard testimony from Petitioner's trial counsel, Ms. M. V. Booker. At the hearing, Ms. Booker testified that she became a member of the Georgia Bar in 1984 and had been employed as an attorney since that time. (Doc. no. 10, Ex. 2, pp. 11-12.) She stated that at the time she represented Petitioner, she devoted approximately sixty percent of her practice to representing criminal defendants, had represented criminal defendants in "at least" fifty jury trials, and represented "hundreds" of clients who entered into guilty pleas. (Id. at 12.) She further testified that she was retained as Petitioner's second attorney; he had previously been represented by a public defender. (Id. at 12-13.)

Ms. Booker testified that Petitioner "indicated from the very beginning that he wanted to enter a guilty plea" and that he was concerned about getting the best possible plea bargain that he could. (Id. at 13.) She further testified that she had frequent communication with Petitioner, but "[a]t no point" did he indicate that he wanted to proceed to trial. (Id.

at 13-14.) Also, Ms. Booker testified that she received discovery information from the State, but because Petitioner expressed a desire to plead guilty, she did not conduct an independent investigation in preparation for the case. (Id. at 14-15.)

In addition, Ms. Booker stated that she was confident that Petitioner was informed that he was waiving certain constitutional rights recognized in Boykin v. Alabama,[8] both prior to and during his guilty plea hearing. (Id. at 18-19.) Ms. Booker also said that she was confident that he entered his plea knowingly and voluntarily and with an understanding of the consequences of the plea. (Id. at 19.) She further testified that she received copies of Petitioner's prior felony convictions, of which there were at least four. (Id. at 20.) Ms. Booker stated that although she could not recall whether these had been certified, it was the State's practice always to produce certified copies of convictions and further that the State had represented that the convictions introduced at the plea hearing were certified copies. (Id.) Ms. Booker also testified that she specifically recalled communications with Petitioner as early as January of 2004 – approximately eight months prior to the plea hearing – regarding the State's intent to pursue recidivist punishment. (Id. at 20-21, 23-24.)

While Petitioner claims in subsections (a), (c), and (d) of Ground One that his counsel was ineffective for failing to conduct research for his case, failing to inform him that the State was seeking recidivist punishment, and failing to object to the introduction of his prior felony convictions, the state habeas court concluded otherwise. After considering the trial record and Ms. Booker's testimony, the state habeas court determined, based on its

---

[8]Boykin v. Alabama, 395 U.S. 238, 243 (1969) (enumerating federal constitutional rights waived by the entry of a valid guilty plea in a state criminal proceedings). Boykin is discussed in greater detail, *infra*, Section III.B.

11

application of the principles set forth in Strickland, that Petitioner failed to show that Ms. Booker's representation fell below an objective standard of reasonableness expected of attorneys in criminal cases, and Petitioner had also failed to meet his burden to show prejudice resulting from Ms. Booker's alleged errors. (Id., Ex. 3, pp. 2-6.)

Specifically, the state habeas court found that Ms. Booker reasonably "did not formulate a defense theory for [the] case because Petitioner did not want a trial and was only concerned with obtaining the best plea bargain that he could." (Id. at 6.) Furthermore, the court concluded that Petitioner was "well aware that the state intended to seek recidivist punishment . . . based on [Petitioner's] lengthy criminal history." (Id.) The state habeas court found that, at a minimum, the record demonstrated that "Petitioner was placed on notice that the state intended to use his prior convictions against him as part of [the State's] case-in-chief and for sentencing purposes." (Id.) Given these circumstances, the state habeas court concluded that Petitioner had failed to meet his burden under Strickland. (Id., Ex. 3, p. 6.)

The Court notes that Petitioner offers no additional evidence, much less "clear and convincing evidence," in his federal habeas petition to undermine or contradict the factual determinations of the state court. Moreover, Petitioner has presented nothing to call into question the state habeas court's conclusion, in light of its factual determinations, that Ms. Booker's assistance was reasonable, nor has he shown that he suffered any prejudice by pleading guilty rather than going to trial. Indeed, nowhere does Petitioner assert that he would have insisted on going to trial but for his counsel's errors. Rather, the record reflects that Ms. Booker helped Petitioner to avoid a much lengthier sentence by convincing the State

to drop seven of the charges against him. (See id., Ex. 2, pp. 117-18.) Furthermore, there is nothing to suggest that the state habeas court's analysis of Petitioner's case was contrary to Strickland, or that the state habeas court applied Strickland's standards in an objectively unreasonable manner to Petitioner's claims of ineffective assistance of trial counsel. Therefore, Petitioner's claims in subsections (a), (c), and (d) of Ground One are without merit.

### B. Claim that Petitioner's Guilty Plea Was Not Knowing and Voluntary Rejected by State Habeas Court

In Ground Two, Petitioner alleges that his plea of guilty was not knowing and voluntary because his trial counsel never discussed the implications of O.C.G.A. § 17-10-7(c)[9] and failed to properly notify him that the State intended to seek recidivist punishment. (Doc. no. 1, p. 6; doc. no. 9, pp. 21-23.)

A plea of guilty constitutes a waiver of several basic constitutional rights, including the right to a trial by jury, the privilege against self-incrimination, and the right to confront one's accusers. See Boykin, 395 U.S. at 243 & n.5. Yet a guilty plea "is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005) (quoting Brady v. United States, 397 U.S. 742, 748 (1970)). In Boykin, the Supreme Court held that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. See id. at 242-43. Where the record is

---

[9]As noted above, O.C.G.A. § 17-10-7(c) provides that upon conviction for a fourth or subsequent felony in the state of Georgia (or convictions which under the laws of any other state or of the United States that if committed in Georgia would qualify as felonies), the defendant will be ineligible for parole until the maximum time provided in the sentence has been served.

13

silent, the Boykin Court refused to presume that the defendant waived his federal constitutional rights to the privilege against compulsory self-incrimination, to a trial by jury, or to confront one's accusers. See id. at 243-44. In Boykin, a plain reading of the record showed that the judge accepted the defendant's guilty plea without inquiring into whether the defendant understood the nature and consequences of his plea. See id. at 239-40.

Despite Boykin, the Due Process Clause does not require express articulation and specific waiver of these rights before a guilty plea may be accepted. See Bradshaw, 545 U.S. at 183. Rather, as the Supreme Court explained in Bradshaw, "the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel." Id. Furthermore, for a guilty plea to be valid, it must be clear from the record that a defendant entered the guilty plea free of coercion and of his own accord. See United States v. Ruiz, 536 U.S. 622, 629 (2002); North Carolina v. Alford, 400 U.S. 25, 31 (1970) ("The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."); McCarthy v. United States, 394 U.S. 459, 466 (1969). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." Frank v. Blackburn, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), modified, 646 F.2d 902 (5th Cir. 1981) (*en banc*), cert. denied, 454 U.S. 840 (1981); see also Finch v. Vaughn, 67 F.3d 909, 914-15 (11th Cir. 1995) (holding that "[r]eviewing courts may set aside a state court guilty plea only for failure to satisfy due process.").

The state habeas court noted that, at the plea hearing, Petitioner stated "that he understood the proceedings against him, that he did not want to proceed to trial, that he was entering his plea knowingly and voluntarily, and that he understood the nature of the charges against him." (Doc. no. 10, Ex. 4, p. 8.) Likewise, the court noted that Petitioner had been informed of his rights under Boykin, and had voluntarily waived those rights. (Id.; see id., Ex. 3, pp. 87-89.) In particular, the state habeas court concluded that "having previously credited the testimony of Petitioner's [trial] counsel, [it did] not find any evidence that Petitioner was coerced in any way, nor [was] there any evidence that Petitioner was misinformed regarding his recidivist status or of the State's intent to seek recidivist punishment." (Id.)

Specifically, the trial court questioned both Petitioner and his counsel whether Petitioner had been advised of the nature of the charges against him and whether he understood those charges; both Petitioner and his trial counsel responded in the affirmative. (Id., Ex. 2, pp. 86-87.) The trial court further informed Petitioner that he faced the possibility of a maximum of 35 years of confinement. (Id. at 90.) When the trial court asked Petitioner whether anyone had pressured or intimidated him into pleading guilty, or if anyone had made him any promises that had caused him to plead guilty, Petitioner answered in the negative. (Id. at 91.) Moreover, in response to questions asked by the trial court, Petitioner specifically stated that he was entering the guilty plea *without any expectation of parole*. (Id. at 92.) After an extensive plea colloquy and factual basis for the plea, Petitioner entered a plea of guilty, which the trial court judge accepted. (Id. at 102.)

Based upon these factual findings, the state habeas court concluded that Petitioner's

15

plea was knowingly, voluntarily, and intelligently entered, and that his plea was not the product of ineffective assistance of counsel. (Id. at 7-8 (citing Boykin, 395 U.S. at 242 and Blackledge v. Allison, 431 U.S. 63, 73-74 (1977)). Here, Petitioner has come forward with no evidence, much less clear and convincing evidence, that the state habeas court's factual findings were incorrect. See 28 U.S.C. § 2254(e)(1). Nor were the state habeas court's conclusions unreasonable in light of the evidence before it. See 28 U.S.C. § 2254(d)(2).

Rather, the state habeas court correctly noted that Petitioner's claims are affirmatively contradicted by his own sworn testimony at the plea hearing, which "'constitute[s] a formidable barrier in any subsequent collateral proceedings.'" (Doc. no. 15, Ex. 5 (citing Blackledge, 431 U.S. at 74). Indeed, "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge, 431 U.S. at 74. As noted above, at the guilty plea hearing, Petitioner, who responded to the court's questions intelligently and coherently, (1) stated that he understood the charges against him and the maximum penalties with which he was faced, (2) acknowledged that he understood the rights he was waiving in entering a plea, and (3) stated that he was entering his plea freely and voluntarily and that no one had coerced him or promised anything in return for pleading guilty, *and that he was entering his plea without any expectation of parole*. (Doc. no. 10, Ex. 2, pp. 86-93).

In sum, Petitioner fails to cast any doubt upon the state habeas court's conclusion that his guilty plea was knowing and voluntary. Nor has Petitioner shown that any aspect of the state habeas court's decision was contrary to or involved an unreasonable application of federal law. 28 U.S.C. § 2254(d). Thus, Petitioner is not entitled to relief on Ground Two of the instant petition.

### C. Ground Three and Subsection (b) of Ground One Were Waived

Petitioner argues in subsection (b) of Ground One that his trial counsel rendered ineffective assistance of counsel for failing to appear at his arraignment. (Doc. no. 1, p. 5.) Indeed, Petitioner's reply brief is devoted almost entirely to this claim. (See generally doc. no. 12.) In Ground Three, Petitioner at first appears to assert that the State failed to disclose evidence favorable to the defense; however, the substance of Petitioner's argument in Ground Three is that his rights were violated when the State filed an amended accusation against him three days before his guilty plea hearing, and the amended accusation included an allegedly "brand new" charge against Petitioner. (Doc. no. 1, p. 8; doc. no. 9, p. 25.) Respondent argues that Petitioner's claim in Ground Three is new but procedurally defaulted because it was not previously raised in the state courts. (Doc. no. 10, p. 11.) Contrary to Respondent's assertions, however, the Court notes that the Court of Appeals of Georgia addressed Petitioner's claim regarding the amended accusation when Petitioner appealed the trial court's denial of his various post-conviction motions. See Payne, 623 S.E.2d at 669.[10]

Because Petitioner is attempting to challenge a conviction entered pursuant to a guilty plea, the range of claims he may press in a federal petition is quite limited:

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the

---

[10]The Court of Appeals of Georgia found that Petitioner had full knowledge of the amended accusation before he confirmed before the trial court that he understood the charges against him and then entered his guilty plea. Id. "Under these circumstances," the Court of Appeals concluded, because Petitioner had pleaded guilty despite this alleged error, he had thereby waived his claim that his rights had been violated by proceeding on the amended accusation. Id.

17

proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

United States v. Broce, 488 U.S. 563, 569 (1989).

Stated otherwise, a guilty plea forecloses arguments which do not go to the validity of the plea itself. See Tollett v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense . . . he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.");[11] see also United States v. Patti, 337 F.3d 1317, 1320 (11th Cir. 2003) ("Generally, a voluntary, unconditional guilty plea waives all nonjurisdictional defects in the proceedings." (citing United States v. Fairchild, 803 F.2d 1121, 1124 (11th Cir. 1986) (*per curiam*)). Of course, Petitioner's guilty plea does not waive claims regarding alleged constitutional violations that occurred after the plea was entered. See Tollett, 411 U.S. at 267.

As set forth in detail above, the Court has concluded that Petitioner's guilty plea was

---

[11]As the state habeas court correctly noted when it addressed Petitioner's claim that his counsel had failed to appear at arraignment (doc. no. 10, Ex. 3, p. 9),

> A guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann[ v. Richardson, 397 U.S. 759, 771 (1970)].

Tollett, 411 U.S. at 267. The state habeas court concluded that because Petitioner entered a valid guilty plea despite his counsel's alleged failure to appear at arraignment, he had waived this error as a defense. (Doc. no. 10, Ex. 3, p. 9.)

knowing and voluntary. As Petitioner's claims in Ground Three and subsection (b) of Ground One present allegations of nonjurisdictional defects that occurred prior to the entry of Petitioner's guilty plea, these claims were waived once Petitioner pleaded guilty, and they must accordingly fail.[12]

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 25th day of April, 2012, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[12]Notably, the characterization of Petitioner's claim in Ground Three is irrelevant: whether this claim is characterized as a Brady violation or as a claim that the State denied his right to due process when it filed an amended accusation against him three days before his guilty plea, such a claim alleges a nonjurisdictional defect that was waived by entry of the guilty plea. Tollett, 411 U.S. at 267.